# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENN EDWARD HARDY,<br><br>          Petitioner,<br><br>   v.<br><br>DERRAL G. ADAMS,<br><br>          Respondent. | 1:09-CV-01934-LJO DLB HC<br><br>FINDING AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS<br><br>ORDER DENYING PETITIONER'S MOTION FOR STAY (Doc. 14)<br><br>OBJECTIONS DUE WITHIN THIRTY (30) DAYS |

Petitioner Glenn Edward Hardy ("Petitioner") is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### **Procedural History**

On July 19, 2007, a jury convicted Petitioner of burglary (Counts One and Two, Cal. Pen. Code, § 459),[1] receiving stolen property (Count Three,§ 496, subd. (a)), and grand theft (Count Four,§ 487, subd. (a)).  See Respondent ("Resp't") Lodged 1.  Petitioner additionally waived his right to a jury trial on special allegations (two strike priors (667, subds. (b)-(i)) and admitted to several prior prison terms (667.5, subd. (b)) and several prior serious felony convictions (667, subd. (a)).  See Resp't Lodged 1.  On September 4, 2007, the court denied Petitioner's motion to dismiss one or both of the prior felony convictions and imposed a total term of 63 years in state prison which included consecutive terms of 25 years to life for Counts One and Two pursuant to California's

---

[1]Unless otherwise indicated, all statutory references are to the California Penal Code.

1  "Three Strikes" law, two consecutive five-year terms for the prior felony convictions and three

2  consecutive one-year term enhancements for each prior prison term.  See Resp't Lodged 1.  The trial

3  court additionally imposed a $300 restitution fine (1202.4, subd. (b)) and awarded 193 days of

4  custody credits.  See Resp't Lodged 1.

5         On June 23, 2008, in its opinion following Petitioner's direct appeal, the California Court of

6  Appeal affirmed the judgment.  See Resp't Lodged 1.  Petitioner filed a petition for review in the

7  California Supreme Court on July 2, 2008.  See Resp't Lodged 5.  The California Supreme Court

8  denied the petition for review on August 13, 2008.  See Resp't Lodged 6.

9         Petitioner filed the instant petition for writ of habeas corpus in the United States District

10  Court, Eastern District of California on November 4, 2008.  Respondent filed an answer on March

11  9, 2010.

12                              **Factual Background**

13         The Court adopts the California Court of Appeal's summation of the facts surrounding

14  Petitioner's crime and conviction:

15         'Regarding Counts Two and Four:  On October 7, 2006, Madera County Sheriff's
           Deputy Tolbert was dispatched to 20214 Avenue 18 regarding a burglary report.
16         Upon arrival, the deputy contacted the victims, Julius and Timothy Deniz.  Timothy
           stated he arrived home and observed a tan colored van with brown stripes parked in
17         his driveway.  He said he pulled into his driveway and observed the van begin to exit
           his driveway.  He said the driver, an African American male between fifty and sixty
18         years of age, briefly spoke to him about renting a house down the street and then fled
           the area.'

19
           'Julius arrived at the location and said his son, Timothy, had called him and told him
20         about the suspicious vehicle and person at their residence.  He said that as he was
           arriving home, he observed the van and briefly gave chase, eventually ending his
21         pursuit as the vehicle fled from him at a high rate of speed.  He said that once he
           returned home, he observed the door to his shop was open and there were numerous
22         items missing.  He said he was missing a battery charger, a tool set, and a Craftsman
           chainsaw.  He also observed a shoe impression that did not belong to anyone in his
23         family.'

24         'On October 9, 2006, Deputy Weisert was traveling south on Golden State Boulevard
           when she passed a northbound Ford van that appeared to match the description of the
25         suspect van.  The deputy initiated a traffic stop.  The driver of the van was identified
           as Glenn Hardy.  Hardy matched the description of the suspect in the burglary of the
26         Deniz residence.  The deputy informed Hardy that the van had been described as
           being involved in a crime.  Hardy informed the deputy that they could go to his
27         residence and the deputies could search his residence for any stolen property.'

28         'At this time, additional deputies responded.  The property loss was described as

"shop items." Hardy was removed from the vehicle. When the deputies opened the rear door of the van, they observed several tools and items that they suspected of being stolen. Deputy Weisert spoke to Julius Deniz by telephone and asked him if he would be willing to come to the location and asked him to list the items missing from his residence. Mr. Deniz stated that a craftsmen 16" chain saw with a black plastic case had been stolen from his residence. These items appeared to match the chain saw and case located in the van. Mr. Deniz subsequently arrived at the scene. He said the van driven by Hardy was the same van he had followed earlier. He also identified the chainsaw and the case found in the van as his property stolen from his residence.'

'Regarding Count One: Deputy Weisert viewed some of the items in the rear of the van and saw a warranty registration card for a William Hughes for an air-hammer. Mr. Hughes was contacted and said that he was the victim of a burglary on October 8, 2006, and the crime had not yet been reported. He said he was missing tools and firearms from his residence. He said the crime had occurred sometime on October 8, 2006. Further, Mr. Hughes said that he had located several suspect shoe tracks and a hand rolled cigarette butt apparently left behind by the suspect.'

'Deputy Weisert removed one of Hardy's shoes and gave it to Deputy Cutler who responded to Mr. Hughes' residence for the burglary report and to check for shoe and tire tracks. Deputy Cutler later called Deputy Weisert and informed her that there were tire tracks at the Hughes' residence which matched the tire tread on the van driven by Hardy. He also said he located shoe tracks which matched the tread pattern on the bottom of Hardy's shoe. . . . [¶] . . . [¶]'

'Deputy Weisert later responded to Mr. Hughes' residence with the property recovered from the van. Mr. Hughes positively identified numerous tools and items belonging to him that were stolen. The items returned to Mr. Hughes included a pair of binoculars, a staple gun, an air hose attachment, a small hammer, a framing hammer, a homemade hammer, a half inch breaker bar, a half inch extension, three eighth inch speed handle, a hole punch set, a tape measure, a drill index, an enamel cooking pot, and food items. The estimated value of the recovered items was determined to be around $351. The deputy noted that there were additional items seized which were not identified by either Mr. Deniz or Mr. Hughes as belonging to them.'

'Deputy Weisert later contacted Tim Deniz at his home. Tim is the son of Julius Deniz. He was shown a lineup of the possible suspects and identified Hardy as the suspect who had burglarized he and his family's residence.'

**Defense**

At trial, appellant testified he was smoking marijuana with a friend in Fairmead between October 7 and 9, 2006. Appellant claimed he leased his van to a person nicknamed "AR" in exchange for some drugs. This lease occurred on Friday, October 7. Appellant said AR returned the van on Monday evening, October 9, the night appellant was arrested. AR told appellant there were items in the van that appellant could keep. Appellant did not ask AR if these items were stolen. Appellant described AR as a skinny Black man in his 40's or 50's with all of his hair and all of his teeth. Appellant said he does not have all of his hair and teeth.

Appellant admitted having a criminal record, committing other burglaries, pleading to the crimes, and serving jail time. He said this was his first trial.

Appellant further testified he had never met nor seen Tim Deniz prior to the trial.

1
2
3

Appellant said he never asked Tim Deniz about adjacent property or the possibility of renting a trailer.  Appellant denied involvement in the burglary of the Deniz farm and claimed he did not know William Hughes or the location of his residence.  Appellant claimed he had never been inside Hughes's home and did not burglarize it in October 2006.

4

See Resp't Lodged 4 at 1.

5
6

### Discussion

**I.      Jurisdiction and Venue**

7
8
9
10
11
12

A person in custody pursuant to the judgment of a state court may file a petition for a writ of habeas corpus in the United States district courts if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, n.7 (2000).  Venue for a habeas corpus petition challenging a conviction is proper in the judicial district in which the petitioner was convicted.  28 U.S.C. § 2241(d).

13
14
15
16

As Petitioner asserts that he is in custody pursuant to a State conviction which violated his rights under the United States Constitution, the Court has jurisdiction over this action.  28 U.S.C. § 2254(a).  Petitioner was convicted in Madera County, California, which is within the Eastern District of California, and thus venue is proper in the Eastern District.  28 U.S.C. § 84; 28 U.S.C. § 2241(d).

17

**II.      Standard of Review**

18
19
20
21
22
23
24
25
26
27

On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment.  Lindh v. Murphy, 521 U.S. 320, 326-27 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997).  The instant petition was filed after the enactment of AEDPA and is consequently governed by its provisions.  See Lockyer v. Andrade, 538 U.S. 63, 70 (2003).  Thus, the petition "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'"  Irons v. Carey, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)), overruled in part on other grounds, Hayward v. Marshall, 603 F.3d 546, 555 (9th Cir. 2010) (en banc); see Lockyer, 538 U.S. at 70-71.

28

Title 28 of the United States Code, section 2254 remains the exclusive vehicle for

1  Petitioner's habeas petition as Petitioner is in the custody of the California Department of

2  Corrections and Rehabilitation pursuant to a state court judgment.  See Sass v. California Board of

3  Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006) overruled in part on other grounds, Hayward,

4  603 F.3d at 555.  As a threshold matter, this Court must "first decide what constitutes 'clearly

5  established Federal law, as determined by the Supreme Court of the United States.'"  Lockyer, 538

6  U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established Federal

7  law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's]

8  decisions as of the time of the relevant state-court decision."  Id. (quoting Williams, 529 U.S. at

9  412).  "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal

10  principle or principles set forth by the Supreme Court at the time the state court renders its decision."

11  Id.  Finally, this Court must consider whether the state court's decision was "contrary to, or involved

12  an unreasonable application of, clearly established Federal law."  Id. at 72 (quoting 28 U.S.C. §

13  2254(d)(1)).  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

14  court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or

15  if the state court decides a case differently than [the] Court has on a set of materially

16  indistinguishable facts."  Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the

17  'unreasonable application clause,' a federal habeas court may grant the writ if the state court

18  identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies

19  that principle to the facts of the prisoner's case."  Williams, 529 U.S. at 413.  "[A] federal court may

20  not issue the writ simply because the court concludes in its independent judgment that the relevant

21  state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that

22  application must also be unreasonable."  Id. at 411.  A federal habeas court making the

23  "unreasonable application" inquiry should ask whether the State court's application of clearly

24  established federal law was "objectively unreasonable."  Id. at 409.

25      Petitioner bears the burden of establishing that the state court's decision is contrary to or

26  involved an unreasonable application of United States Supreme Court precedent.  Baylor v. Estelle,

27  94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states,

28  Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court

1   decision is objectively unreasonable.  Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While

2   *only* the Supreme Court's precedents are binding on the Arizona court, and only those precedents

3   need be reasonably applied, we may look for guidance to circuit precedents"); Duhaime v.

4   Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999) ("[B]ecause of the 1996 AEDPA amendments, it

5   can no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit

6   precedent on a federal Constitutional issue. . . .  This does not mean that Ninth Circuit case law is

7   never relevant to a habeas case after AEDPA.  Our cases may be persuasive authority for purposes of

8   determining whether a particular state court decision is an 'unreasonable application' of Supreme

9   Court law, and also may help us determine what law is 'clearly established'").  Furthermore, the

10  AEDPA requires that the Court give considerable deference to state court decisions.  The state

11  court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1).  A federal habeas court is

12  bound by a state's interpretation of its own laws.  Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.

13  2002).

14          The initial step in applying AEDPA's standards is to "identify the state court decision that is

15  appropriate for our review."  Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005).  Where more

16  than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last

17  reasoned decision.  Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) for the presumption

18  that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same

19  ground as the prior order).  Thus, a federal habeas court looks through ambiguous or unexplained

20  state court decisions to the last reasoned decision to determine whether that decision was contrary to

21  or an unreasonable application of clearly established federal law.  Bailey v. Rae, 339 F.3d 1107,

22  1112-13 (9th Cir. 2003).

23          In the instant petition, Petitioner raises two grounds for relief.  Petitioner raised both Ground

24  One and Ground Two through a direct appeal to the California Court of Appeal, which affirmed the

25  judgment in a reasoned opinion.  See Resp't Lodged 1.  Petitioner's claim was then raised in a

26  petition for review to the California Supreme Court, which summarily denied review.  See Resp't

27  Lodged 6.  The California Supreme Court, by its "silent order" denying review, is presumed to have

28  denied the claims presented for the same reasons stated in the opinion of the lower court.  Ylst v.

1   Nunnemaker, 501 U.S. 797, 803 (1991).  For both grounds raised, the California Court of Appeal

2   was the last state court to issue a reasoned opinion; thus, the Court analyzes whether the appellate

3   court's decision is an objectively unreasonable application of federal law.

4   **III.     Respondent's Claim that Petitioner's Ground Two is Procedurally Defaulted**

5           Respondent contends that Ground Two is procedurally barred under the "invited error

6   doctrine."[2]  More specifically, Respondent argues:

> As an initial matter, Petitioner's claim is procedurally barred. The state court in this
> case applied the doctrine of invited error to bar Petitioner's claim regarding the giving
> of CALCRIM No. 300. (Lodged Doc. No. 1 at 12 [citing *People v. Thornton*, 41 Cal.
> 4th 391, 436 (2007)].)  "The doctrine of invited error bars a criminal defendant from
> challenging an instruction given by the trial court when the defendant has made a
> conscious and deliberate tactical choice to request the instruction." *Id.*  Accordingly,
> to the extent Petitioner's claim was raised in state court, it is barred from
> consideration here.
>
>           . . . .
>
> The doctrine of invited error applies to claims of instructional error where the
> defendant requests a particular instruction he then later claims was erroneous, *Tiger v.
> Workman*, 445 F.3d 1265, 1267-68, or where the defendant refuses an instruction he
> later claims should have been given, *Butcher v. Marquez*, 758 F.2d 373, 377 (9th Cir.
> 1985). At least where the state court has applied the doctrine of invited error to bar
> the claim, as it has here, the Ninth Circuit has recognized the procedural bar.  *Leavitt
> v. Arave*, 383 F.3d 809, 832-33 (9th Cir. 2004) . . . .
>
> Here, because Petitioner himself sought the instruction he now contends was
> erroneous (CT at 84-85; see also CT at 133), the doctrine of invited error should be
> applied to bar his claim.

See Answer at 10-11, 14 [citations omitted].  However, the resolution of the merits of Ground Two

is comparatively straightforward on the current record; accordingly, the Court will appropriately

exercise its discretion to decide the claims on that basis.  Lambrix v. Singletary, 520 U.S. 518, 525

(1997); Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not

infrequently more complex than the merits issues presented by the appeal, so it may well make sense

---

[2] State courts may decline to review a claim based on a procedural default.  Wainwright v. Sykes, 433 U.S. 72, 81-82 (1977). As a general rule, a federal habeas court " 'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.' " Calderon v. United States District Court (Bean), 96 F.3d 1126, 1129 (9th Cir. 1996).  Even if the state rule is independent and adequate, the claims may be heard if the petitioner can show:  (1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to consider the claims will result in a fundamental miscarriage of justice.  Coleman, 501 U.S. at 749-50.  However, a reviewing court need not invariably resolve the question of procedural default prior to ruling on the merits of a claim where the issue of procedural default turns on difficult questions of state law. Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997); Walters v. Maass, 45 F.3d 1355, 1360 n. 6 (9th Cir. 1995).

1    in some instances to proceed to the merits if the result will be the same").

2    **IV.    Review of Petitioner's Claims**

3            Petitioner's Ground One asserts that the trial court abused its discretion when it denied his

4    motion to dismiss at least one or both of his prior strikes.  See Petition at 4,7-9.  In Ground Two

5    Petitioner contends the trial court improperly instructed the jury resulting in a violation of his rights

6    to a fair trial and due process as "guaranteed by both the state and federal constitutions."  See

7    Petition at 18.

8            **A.    Ground One:  The Trial Court's Denial of Petitioner's Romero Motion to
             Dismiss A Prior Conviction**

9

10           Petitioner claims that the trial court "abused its discretion" in not striking a prior "strike"

11   conviction which resulted in a violation of his due process rights.[3]  He argues that the conviction

12   should have been struck under People v. Romero, 13 Cal.4th 497 (1996) (holding that sentencing

13   courts have discretion to dismiss allegations of prior felony "strike" convictions brought under

14   "Three Strikes" Law) because while Petitioner's criminal history was "not laudable, it [reflected] the

15   history of a non-violent criminal."  See Petition at 12.  Additionally, Petitioner argues the trial

16   court's refusal to strike either one of two prior convictions resulted in a sentence that even the trial

17   court believed was "unfair given the totality of the circumstances of this offense . . . ."  See Petition

18   at 11.  The California Court of Appeal found that the trial court did not abuse its discretion in

19   denying Petitioner's motion under Romero, and that the sentence was valid under state law, based on

20   the following reasoning:

21           In ruling whether to strike or vacate a prior serious and/or violent felony conviction
             allegation or finding under the three strikes law, on its own motion, "in furtherance of
22           justice" pursuant to section 1385, subdivision (a), or in reviewing such a ruling, the
             court in question must consider whether, in light of the nature and circumstances of
23           his present felonies and prior serious and/or violent felony convictions, and the
             particulars of his background, character, and prospects, the defendant may be deemed
             outside the scheme's spirit, in whole or in part, and hence should be treated as though

24

25   _____

26   [3]The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving
     at their decision.  Early v. Packer, 537 U.S. 3, 8 (2002).  Where the state courts have not addressed the constitutional issue
27   in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue.
     "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we
     can determine whether a silent state court decision is objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853
28   (9th Cir. 2003).  Here because the Court of Appeal's reasoned opinion did not address Petitioner's federal constitutional issue
     raised in Ground One, this Court independently reviews the record.

he had not previously been convicted of one or more serious and/or violent felonies. *People v. Williams* (1998) 17 Cal.4th 148, 161.

In the instant case, the trial court was well aware of its discretion under section 1385 and carefully set forth and considered the relevant factors, including evidence presented by appellant. The court frankly acknowledged the difficulty of the decision but ultimately concluded that appellant was within the spirit of the three strikes law. The trial court specifically held appellant was not deserving of dismissal of a strike prior for the following reasons: (1) appellant continued to be involved in theft-related crimes even while on parole; (2) his priors were not remote; (3) he had not exhibited rehabilitation and a law-abiding attitude; and (4) his new offenses were serious. Although the court subsequently commented that [it] did not "necessarily believe" the sentence was fair under the circumstances, the court further explained that the sentence was imposed "because you're committing these crimes."

. . . .

The trial court properly exercised its discretion by weighing the relevant factors and circumstances and declining to strike one or both of appellant's prior convictions under *Romero.* Reversal is not required.

<u>See</u> Resp't Lodged 1 at 9-10 (footnotes omitted).

As noted above, Petitioner argues that the denial of his <u>Romero</u> motion was both an "abuse of discretion" and violated his right to due process. While the federal constitutional guarantee of due process is applicable at sentencing, the federal right to due process, unlike state law, does not impose an "abuse of discretion" standard. <u>Gardner v. Florida</u>, 430 U.S. 349, 358 (1977). Instead, a federal court may vacate a state sentence imposed in violation of due process if a state trial judge imposed a sentence "in excess of state law." <u>Walker v. Endell</u>, 850 F.2d 470, 476 (9th Cir. 1988). The sentence in this case did not exceed that permitted by California law. Petitioner's sixty three year term included two consecutive terms of 25 years to life for two counts of burglary pursuant to the state's "Three Strikes" law, as well as additional sentence enhancements authorized by state statute. Petitioner does not contend that either of the 25 years to life terms or any the sentence enhancements he received were not authorized by California law. <u>See</u> §§ 667(e)(2)(A), 667.5(a)(1), and 667.5(b). To be sure, a much longer sentence was authorized by state law, however, the trial court elected to stay the imposition of two additional but consecutive terms of 25 years to life on Counts Three and Four. <u>See</u> Resp't Lodged 1. The fact that the trial court had discretion under California law to impose a lower sentence, a discretion which the state appellate court found was not abused as a

1  matter of state law,[4] does not make the sentence, which falls within the statutorily authorized range,

2  "in excess" of state law.

3       A sentence may violate due process under other circumstances, including, for example, if it is

4  based on materially false or unreliable information or based on a conviction infected by

5  constitutional error, see United States v. Hanna, 49 F.3d 572, 577 (9th Cir. 1995); Walker, 850 F.2d

6  at 477, or if it is under the wrong statute, Murtishaw v. Woodford, 255 F.3d 926, 969 (9th Cir.

7  2001); accord Ballard v. Estelle, 937 F.2d 453, 456-67 (9th Cir. 1991).  However, here Petitioner

8  does not allege, nor is there any basis in the record for finding, that the sentence was based on

9  materially false or unreliable information, or an unconstitutional conviction, or that it was imposed

10 under the wrong statute.

11      Based on the above analysis, the Undersigned finds that the state courts' decision denying

12 Petitioner's due process claim were not contrary to, or an unreasonable application of, clearly

13 established Supreme Court precedent.  See 28 U.S.C. § 2254(d)(1),(2).  Accordingly, Petitioner is

14 not entitled to habeas relief on Ground One.

15      **B.      Ground Two: The Trial Court's Issuance of CALCRIM No. 300**

16      In Ground Two, Petitioner contends that the trial court's issuance of jury instruction

17 CALCRIM No. 300 violated his right to due process.  He argues that in giving CALCRIM No. 300

18 the trial court erroneously instructed the jury on the requisite burden of proof.  See Petition at 18-19.

19 Specifically, Petitioner contends that the challenged instruction "improperly permits a reasonable

20 juror to conclude [that] defendant may have an obligation to prove or disprove certain specific issues

21 and facts at trial . . ." and that "[s]uch a conclusion would be a clear violation of a criminal

22 defendant's constitutional right to have the government "prove" him guilty.  Id.  The California

23 Court of Appeal rejected this argument, reasoning as follows:

24      This court stated in People v. Ibarra (2007) 156 Cal.App.4th 1174 (Ibarra):

25      '. . . In full, the instruction reads: 'Neither side is required to call *all* witnesses who

---

[4]The Court of Appeals determination that the trial court did not abuse its discretion is a determination of state law that is binding on this Court on habeas review.  Hicks v. Feiock, 485 U.S. 624, 629 (1988); see also Bueno v. Hallahan, 988 F.2d 86, 88 (9th Cir. 1993) (federal courts must defer to the state courts' interpretation of state sentencing laws).

may have information about the case or to produce *all* physical evidence that might be relevant.' (CALCRIM No. 300, italics added.)  Acknowledging that the instruction 'may be technically correct as far as it goes,' he [appellant] nonetheless argues that the jury might be left with the belief that the defense is required to produce some evidence.'

'*People v. Simms* (1970) 10 Cal.App.3d 299 (*Simms*) approved an analogous instruction on all available evidence as 'a correct statement of the law.'  (*Id.* at p. 313.)  No significant differences exist between CALCRIM No. 300 and the instruction at issue in *Simms*.  Additionally, the court here charged the jury not only with CALCRIM No. 200 on the prosecution's burden of proof beyond a reasonable doubt but also with CALCRIM No. 355 on the defendant's right not to testify:  "A defendant has an absolute constitutional right not to testify.  He or she may rely on the state of the evidence and argue that the People have failed to prove the charges beyond a reasonable doubt.  Do not consider, for any reason at all, the fact that the defendant did not testify.  Do not discuss that fact during your deliberations or let it influence your decision in any way.'

'On the charge to the jury here, there is no reasonable likelihood that the jury misunderstood CALCRIM No. 300. ([ *People v.*] *Anderson* [ (2007) ] 152 Cal.App.4th [919,] 937-938; see *Estelle* [*v. McGuire* (1991) ] 502 U.S. [62,] 72-73; [*People v.*] *Clair* [ (1992) ] 2 Cal.4th [629,] 663.)  So we apply the usual presumption that jurors are able to correlate, follow, and understand the court's instructions and reject his argument. ([*People v.*] *Sanchez* [ (2001) ] 26 Cal.4th [834,] 852.)" (*Ibarra*, *supra*, 156 Cal.App.4th at pp. 1189-1190.)'

Here, as in *Ibarra* and *People v. Anderson*, *supra*, 152 Cal .App.4th 919, the trial court instructed the jury in CALCRIM Nos. 220 (reasonable doubt), 315 (eyewitness identification), and 359 (corpus delicti: independent evidence of a charged crime). These instructions clearly advised the jury that they could not convict appellant unless the People proved his guilt beyond a reasonable doubt.  In any event, appellant specifically requested that the court give CALCRIM No. 300.  The doctrine of invited error bars a criminal defendant from challenging an instruction given by the trial court when the defendant has made a conscious and deliberate tactical choice to request the instruction. (*People v. Thornton* (2007) 41 Cal.4th 391, 436.)  Accordingly, appellant may not complain on appeal about the giving of CALCRIM No. 300.

See Resp't Lodged 1 at 7 (footnotes omitted).

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in a federal habeas corpus action.  Estelle v. McGuire, 502 U.S. 62, 71-72 (1991).  To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.  Id. at 72.  Additionally, the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  Id.  The court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process.  United States v. Frady, 456 U.S. 152, 169 (1982), citing, Henderson v. Kibbe, 431 U.S. 145, 154

1   (1977).  Furthermore, even if it is determined that the instruction violated the petitioner's right to due

2   process, a petitioner can only obtain relief if the unconstitutional instruction had a substantial

3   influence on the conviction and thereby resulted in actual prejudice under Brecht v. Abrahamson,

4   507 U.S. 619, 637 (1993) (whether the error had a substantial and injurious effect or influence in

5   determining the jury's verdict).  Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996).  The burden

6   of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral

7   attack on the constitutional validity of a state court's judgment is even greater than the showing

8   required to establish plain error on direct appeal.  Id.

9        As stated above, in this case the state court determined that the instruction was proper under

10  state law.  Federal courts are bound by state court rulings on questions of state law.  Oxborrow v.

11  Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), cert. denied, 493 U.S. 942 (1989).  A "mere error of state

12  law, one that does not rise to the level of a constitutional violation, may not be corrected on federal

13  habeas."  Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) (O'Connor, J., concurring).  Further, there

14  is no question that the alleged error did not violate any of Petitioner's federal constitutional rights as

15  the instructions to the jury were reasonable under any standard.  The jury was instructed to consider

16  all the instructions as a whole (CALCRIM No. 200); and in rendering a finding of guilt beyond a

17  reasonable doubt, all evidence mut be considered (CALCRIM No. 220); and that though the defense

18  may present evidence it was not required to do so because defendant was "presumed innocent" and

19  "does not have to prove that he is not guilty" (CALCRIM No. 100).  The jury is presumed to have

20  followed these instructions.  Weeks v. Angelone, 528 U.S. 225, 234 (2000).

21        Finally assuming arguendo the trial court erred in providing the challenged instruction , in

22  light of the ample evidence presented at trial, the Court does not find the error to have had a

23  substantial and injurious effect or influence in determining the jury's verdict.  Brecht, 507 U.S. at

24  637.  According to testimony adduced at trial, on the day that Julius Deniz's residence was

25  burglarized, Julius' son, Tim Deniz, observed Petitioner in his vehicle while parked in his father's

26  drive-way.  Reporter's Transcript ("RT") at 341-342.  Additionally, Tim Deniz spoke briefly with

27  Petitioner before Petitioner departed in his vehicle.  RT at 343-344.  In a "six-pack" line up for law

28  enforcement officers, Tim Deniz later identified Petitioner as the individual he had spoken with in

U.S. District Court
E. D. California

his father's driveway.  RT at 346-348.  Additionally, when sheriff's officer's later stopped and searched Petitioner's vehicle, they found a craftsman 16" chainsaw, which Julius Deniz later identified as the chainsaw stolen from his residence.  RT at 370.  Mr. William Hughes also identified property found in Petitioner's vehicle as his property stolen in a second home burglary.  RT at 386-389.  Finally, law enforcement officers identified shoe tracks and tire tread marks located at the Hughes' residence as matching Petitioner's shoes and the tires found on Petitioner's vehicle.  RT at 404, 425-427.  In his defense, Petitioner's counsel argued that a second individual and not Petitioner had leased Petitioner's vehicle and could have accomplished the burglaries.  RT at 535-536. However, a federal habeas court "faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Davis v. Woodford, 384 F.3d 628, 639 (9th Cir. 2004).  Accordingly, the evidence presented at trial was more than sufficient to support Petitioner's conviction for burglary any alleged error in the instructions was harmless under Brecht.  The claim should be denied.

**V.      Petitioner's Motion for Stay**

On March 21, 2011, Petitioner filed a motion to stay proceedings in order to exhaust remedies in state court regarding Ground One.  See Doc. 14.  A district court has discretion to stay a petition which it may validly consider on the merits.  Rhines v. Weber, 544 U.S. 269, 276 (2005); Calderon v. United States Dist. Court (Taylor), 134 F.3d 981, 987-88 (9th Cir. 1998); Greenawalt v. Stewart, 105 F.3d 1268, 1274 (9th Cir. 1997), cert. denied, 519 U.S. 1102, (1997).  However, the Supreme Court held that this discretion is circumscribed by the Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Rhines, 544 U.S. at 277.  In light of AEDPA's objectives, "stay and abeyance [is] available only in limited circumstances" and "is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." Id.  In this case, the Court does not find good cause supporting Petitioner's motion to stay because as noted above, Petitioner fully exhausted his first claim (Ground One) in state court proceedings and offers no other explanation or theories in support of his motion.  Accordingly, the

1    Court will deny Petitioner's motion for a stay of the proceedings.

2

3                              **RECOMMENDATION**

4         Accordingly, the Court RECOMMENDS that:

5         1.     The petition for writ of habeas corpus be DENIED WITH PREJUDICE; and

6         2.     The Clerk of the Court be DIRECTED to enter Judgment for Respondent; and

7         3.     A Certificate of Appealability be DENIED.

8         This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill,

9    United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule

10   304 of the Local Rules of Practice for the United States District Court, Eastern District of California.

11   Within thirty (30) days after being served with a copy, any party may file written objections with the

12   court and serve a copy on all parties.  Such a document should be captioned "Objections to

13   Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and

14   filed within fourteen (14) court days after service of the objections.  The Court will then review the

15   Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(c).  The parties are advised that failure to

16   file objections within the specified time may waive the right to appeal the District Court's order.

17   <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

18

19                                 **ORDER**

20        1.     Petitioner's request for stay is DENIED.

21

22        IT IS SO ORDERED.

23        **Dated:**   **April 18, 2011**                    **/s/ Dennis L. Beck**
                                                        UNITED STATES MAGISTRATE JUDGE
24

25

26

27

28